IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CLYDE SCOTT, | ) | CASE NO. 1:14CV1219 |
| | ) | |
| Petitioner, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| BRIGHAM SLOANE, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Clyde Scott ("Petitioner" or "Scott") brings this habeas corpus action pursuant to 28 U.S.C. § 2254. Doc. 1. Scott is detained at the Lake Erie Correctional Institution, having been found guilty by a Cuyahoga County, Ohio, Court of Common Pleas jury of two counts of kidnapping, three counts of aggravated robbery, two counts of felonious assault, all with three-year gun specifications; two counts of theft; and one count of having a weapon while under a disability, all against two different victims. *State v. Scott*, Case No. CR-11-557947-A (Cuyahoga Cty. Common Pleas Ct., filed July 25, 2012). At resentencing, the trial court merged the kidnapping, aggravated robbery, felonious assault, and theft counts in addition to the gun specifications as to each victim. The state elected to proceed to sentence on the aggravated robbery count and the trial court sentenced Scott to nine years for aggravated robbery and three years on the gun specifications as to each victim, to be served consecutively, and three years for having a weapon under a disability, to be served concurrently, for an aggregate sentence of 24 years in prison. Doc. 24-1, pp. 137-138.

On June 3, 2014, Scott filed his Petition for Writ of Habeas Corpus setting forth three grounds for relief. Doc. 1, pp. 5-7. He later withdrew his second ground for relief. *See* Docs. 18; 19; 23, p. 2, n.1. This matter has been referred to the undersigned Magistrate Judge for a

1

Report and Recommendation pursuant to Local Rule 72.2. As set forth more fully below, Ground One fails on the merits and Ground Three is procedurally defaulted. Thus, the undersigned recommends that Scott's Petition for Writ of Habeas Corpus (Doc. 1) be **DISMISSED** in part and **DENIED** in part.[1]

## I. Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb,* 540 F. 3d 393, 397 (6th Cir. 2008).

### A. State Court Action

#### 1. Underlying Facts

The following summary of underlying facts is taken from the opinion of the Cuyahoga County Court of Appeals, Eighth Appellate District of Ohio:[2]

> {¶ 4} Carlos Williams testified that late in the evening of December 26, 2011, he was walking on Clark Avenue, near West 25th Street, when he saw two guys walking toward him. He stated that one of the men "was tall, dark skinned with a beard, [and] was wearing black, like a black hoodie." Williams described the second man as "light skinned, shorter than the tall guy," and had "short hair." Williams identified the taller male in court as Scott.
>
> {¶ 5} Williams testified that the two men flagged him down and asked him for marijuana. He told them that he did not have any. At that point, Williams said the shorter male grabbed his arm and "started going in his pants to reach for something," while Scott blocked his path "so [he] wouldn't take off running." The shorter man pulled a black gun out of his pocket and pointed it at Williams's face. Scott began rummaging through Williams's pockets. Scott took Williams's wallet, which was on a "wallet chain." Williams described a "wallet chain" as a chain that attaches to your wallet and connects to the belt loop of your jeans. Williams said after Scott took his wallet, Scott "grabbed the

---

[1] The ground in the petition that fails on the merits results in a denial and the ground that is procedurally defaulted results in a dismissal.

[2] Scott has not demonstrated by clear and convincing evidence that the state court's findings were incorrect. Accordingly, the state court's findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1); *see also Railey,* 540 F. 3d at 397.

2

gun from his partner." Scott pointed the gun in Williams's face, threatened to shoot him, and stated, "[t]his is how you do it." Williams told them that he did not have anything else.

{¶ 6} Williams testified that when a car drove by, he took off running across the street. He heard a gunshot as he was running. He thought that the men were shooting at him, but he did not get hit. He called 911.

{¶ 7} Williams said the entire robbery only lasted about two minutes. At the time of the robbery, it was dark and there were "not really" any street lights, but there was light coming from West 25th Street; it was not completely dark. Williams stated that the two men were close enough to him that they were "right there in my face," so he was able to see them even though it was dark. Williams testified that he was 100 percent positive that Scott was one of the two men who robbed him at gunpoint. He was also "very sure" that Scott was the one who took the gun and pointed it in his face because he was the "big, tall guy."

{¶ 8} Williams saw the two men run toward West 25th Street. Williams followed the two men. When Williams reached West 25th Street, he saw the two men "dragging another guy off in the cut." Williams recognized them because they were wearing the same clothes. Williams said they grabbed the other man "less than a minute" from the time they had robbed him. It was "pretty bright" where he saw the men on West 25th Street. Williams could not hear what they were saying, but he could see them "pulling" the victim while he was still on the phone with the police. Williams saw the victim run from the two men and he heard three gunshots. Although he could not see who fired the gun, he saw the victim fall in the street. Williams was still on the phone with police. Williams saw Scott run diagonally across West 25th Street, but did not see where the shorter man went.

{¶ 9} Williams said that police arrived within three to four minutes. Williams got into the police cruiser. He told the officer where he saw Scott run. Williams said they already had the shorter male suspect in custody. Williams identified his wallet, wallet chain, money, and house keys that the officers had obtained from the shorter male suspect. Williams identified the shorter male suspect as one of the men who robbed him. A minute or two later, the officers brought the second suspect to Williams and asked if he could identify him. Williams identified Scott as the other man who robbed him.

{¶ 10} Marion Polk testified that around midnight on December 26, 2011, he was walking down the street when "two guys came out of a doorway on me with a gun." He explained that the men were "two black dudes." He further described the one with the gun as being "kind of big," with facial hair, and the other one was "kind of small." He identified Scott in court as being the bigger man with the gun.

{¶ 11} Polk said that the men pulled him between two buildings. Scott held the gun at Polk's head. The shorter man was telling Scott to shoot Polk and beat him up. Polk testified that the two men were "taking all of [his] stuff." They took Polk's ring, wallet, keys, cigarettes, Chap Stick, and hat. While the men were arguing whether to shoot Polk,

3

Polk took off running toward Clark Avenue. Polk heard someone say, "shoot him." Polk got shot in his buttocks.

{¶ 12} Polk testified that the street light was out; there was still "some light, but it was not as bright as usual." Polk was 100 percent positive that Scott was the man who had the gun that night. As Polk was running, he ran into a police car. He told police that he had been robbed and shot in the buttocks. While he was still at the hospital, police officers brought all of his "important stuff" to him, including his wallet and his keys. He identified a photo of all of the items that were taken from him that night.

{¶ 13} Polk identified a photo of a male wearing a white "hoodie." Polk did not recognize the male (it was Scott's codefendant), but said that the male was wearing Polk's "hoodie" that the robbers had just taken off of him during the robbery.

{¶ 14} Police officers responded to the area. One officer testified that he saw two males who matched the description. The two males were walking, but when they saw police, they took off running. Officers captured the shorter male suspect first. The shorter male suspect was wearing a white "hoodie." Officers saw that he had a "bulky" sock that contained evidence from the crimes, including both victims' wallets, Williams's wallet chain, and various other items that were taken from Polk. The officers photographed the evidence. After photographing the evidence, Williams identified the evidence that belonged to him.

{¶ 15} Another officer found Scott hiding in a dumpster. He drove Scott back to where the other officers had detained the other suspect. A gunshot residue test was done on Scott; it turned out to be positive.

*State v. Scott*, 2013 WL 1696100, at \*\* 1-3 (Ohio Ct. App. April 18, 2013).

### 2. Procedural History

The January 2012 term of the Cuyahoga County Grand Jury indicted Scott on 12 counts against two separate victims for the incidents occurring on or about December 26, 2011. Doc. 24-1, pp. 1-8. For the alleged acts against the victim Marion Polk, Scott was charged with kidnapping, R.C. 2905.01(B)(2), two counts of felonious assault, R.C. 2903.11(A)(1) and (2), two counts of aggravated robbery, R.C. 2911.01(A)(1) and (3), and one count of theft, R.C. 2913.02(A)(1). Doc. 24-1, pp. 1-4. For the alleged acts against the victim Carlos Williams, Scott was charged with one count of kidnapping, R.C. 2905.01(B)(2), one count of felonious assault, R.C. 2903.11(A)(2), one count of aggravated robbery, R.C. 2911.01(A)(1), and one

4

count of theft, R.C. 2913.02(A)(1). Doc. 24-1, pp. 5-7. He was also charged with two counts of having a weapon while under a disability, R.C. 2923.13(A)(3). The kidnapping, aggravated robbery, and felonious assault charges carried one- and three-year firearm specifications. Doc. 24-1, pp. 1-7. Scott pled not guilty to all charges. Doc. 24-1, p. 9.

The case proceeded to trial and the jury found Scott guilty on all counts except felonious assault as to Williams. Doc. 24-1, p. 14. On July 20, 2012, the court sentenced Scott on all counts to an aggregate sentence of 24 years in prison. Doc. 24-1, p. 15.

### B. Direct Appeal

On August 16, 2012, Scott, through new counsel, filed a notice of appeal with the Ohio Court of Appeals. Doc. 24-1, p. 21. In his brief, he raised the following assignments of error:

> 1. The trial court erred in overruling Appellant's Rule 29 Motion for Acquittal where there was insufficient evidence to identify Appellant as the perpetrator of the crimes herein. (*Transcript @ pps. 441-444*).
>
> 2. The trial court abused its discretion by imposing a 24 year consecutive prison sentence on the Appellant that was contrary to law, unduly harsh, and unsupported by the Record. (*Record @ p. 37 and Transcript @ pps. 544-558*).
>
> 3. The trial court erred in not adequately and fully investigating Appellant's ongoing pro se complaint about the effectiveness of his court-appointed attorney who was defending him in a felony case and in failing to adequately preserve such investigation on the Record for the purpose of an effective appellate review. (*Transcript @ pps. 9-12 and pps. 18-33*).

Doc. 24-1, p. 29. On April 18, 2013, the Ohio Court of Appeals affirmed Scott's conviction but vacated his sentence because the trial court failed to merge allied offenses of similar import. Doc. 24-1, pp. 102-123. The case was remanded for a new sentencing hearing. Doc. 24-1, p. 123; *Scott*, 2013 WL 1696100. Scott did not timely appeal this decision to the Ohio Supreme Court.

### C. Re-sentencing

5

On June 12, 2013, the trial court entered a new sentence pursuant to the Ohio Court of Appeals' remand order. Doc. 24-1, pp. 137-138. The trial court merged the kidnapping, aggravated robbery, felonious assault, and theft counts in addition to the gun specifications as to each victim. The state elected to proceed to sentence on the aggravated robbery count and the trial court sentenced Scott to nine years for aggravated robbery and three years on the gun specifications as to each victim, to be served consecutively, and three years for having a weapon under a disability, to be served concurrently, for an aggregate sentence of 24 years in prison. Doc. 24-1, pp. 137-138.

### D. Direct Appeal of Re-sentencing Judgment

On July 8, 2013, Scott, pro se, filed a notice of appeal with the Ohio Court of Appeals. Doc. 24-1, p. 145. He moved for appointment of appellate counsel but the trial court denied his motion. Doc. 24-1, pp. 139, 144. On August 27, 2013, the Court of Appeals, sua sponte, dismissed Scott's appeal because he failed to file the record. Doc. 24-1, p. 149.

Scott did not file a timely appeal to the Ohio Supreme Court.

### E. Delayed Appeal of Re-sentencing Judgment

On October 25, 2013, Scott, pro se, filed a notice of appeal and motion for leave to file a delayed appeal with the Ohio Court of Appeals. Doc. 24-1, pp. 151, 156. Scott argued that his appeal from the re-sentencing judgment was untimely because neither the court nor his attorney had advised him of his right to appeal or the 30-day time frame for filing an appeal. Doc. 24-1, p. 160. He also moved for appointment of counsel in the trial court but his motion was denied. Doc. 24-1, pp. 142, 144. On November 12, 2013, the Ohio Court of Appeals denied Scott's motion for leave to file a delayed appeal and dismissed his case. Doc. 24-1, pp. 162, 163.

Scott did not file a timely appeal to the Ohio Supreme Court.

### F. Post-conviction Motions

On December 18, 2013, Scott filed three pro se motions in the trial court. He filed a "Motion for a Final Approachable [sic] Order," arguing that his sentence was void because he had not been advised of his appellate rights by the court. Doc. 24-1, pp. 124-125. The trial court denied his motion. Doc. 24-1, p. 129.

Scott also filed a Motion to Revise and Correct the Sentencing Entry. The trial court denied his motion. Doc. 24-1, p. 132.

Scott filed a "Motion for Leave Order to Motion for New Trial Order." Doc. 24-1, pp. 133-134. The trial court denied his motion. Doc. 24-1, p. 136. Scott did not appeal any of these rulings.

### G. Motion for Delayed Appeal to Ohio Supreme Court

On September 25, 2014, Scott, pro se, filed a notice of appeal and a motion for delayed appeal in the Ohio Supreme Court. Doc. 24-1, pp. 197, 199. He was attempting to appeal the judgments of the Ohio Court of Appeals affirming his original conviction and dismissing his appeal of his resentencing. Doc. 24-1, p. 198. For cause for filing his delayed appeal, Scott stated that he was illiterate; ignorant of the law; relied on the assistance of others; was not advised of his rights to appeal, right to appellate counsel, or his right to a free transcript; and that he was actually innocent. Doc. 24-1, p. 200. He raised the following propositions of law:

> 1. The trial court erred in overruling appellant's Rule 29 motion for acquittal where there was insufficient evidence to identify appellant as the perpetrator of the crimes herein.
>
> 2. The trial court abused its discretion by imposing a 24-year consecutive prison sentence on the appellant that was contrary to law, undu[]ly harsh, and unsupported by the record in violation [of] **Blakely v. Washington, 542 U.S. 296**.
>
> 3. The trial court erred in not adequately and fully investigating appellant's ongoing pro se complaint about effective[ness] of his court-appointed attorney who was defending him in a felony case and in failing to adequately preserve such investigation on the record for the purpose of an effective appellate review.

7

> 4. The appellant has been denied his fundamental right to appeal w[h]ere the common pleas court **did not** advise him of his right to appeal; **did not** advise him of his rights to appellate counsel or the right to records at state expense, therefore the court of appeals should have granted his motion for delayed appeal see relevant **United States Supreme Court case laws**.
>
> 5. The appellant must be reversed and he restored to liberty because this appellant is actually innocent via **McQuiggin v. Perkins, 133 S.Ct 1924**; an[d] **Bousley v. United States, 523 U.S. 614**.

Doc. 24-1, pp. 200-202. On November 5, 2014, the Ohio Supreme Court denied Scott's motion for a delayed appeal and dismissed his case. Doc. 24-1, p. 229.

### H. Application for Reopening of First Appeal Pursuant to Rule 26(B)

On December 17, 2013, Scott, pro se, filed an application for reopening his initial direct appeal pursuant to Ohio App. Rule 26(B). Doc. 24-1, pp. 165-175. He argued that his appellate counsel was ineffective for failing to raise claims of ineffective assistance of trial counsel and that the verdict was against the manifest weight of the evidence. Doc. 24-1, pp. 167-170. On February 4, 2014, the Ohio Court of Appeals denied his application for reopening as untimely and found that Scott had not demonstrated good cause for his untimely application. Doc. 24-1, pp. 185-189.

Scott did not appeal to the Ohio Supreme Court.

### I. Petition/Complaints for Mandamus, Habeas Corpus, Declaratory Judgment and Prohibition

On August 6, 2014, Scott, pro se, filed a "Petitions/Complaints for Mandamus, Habeas Corpus, Declaratory Judgment and Prohibition" in the Ohio Supreme Court. Doc. 24-1, p. 191. He raised the following issues:

> 1. The judgment of the common pleas court is void was entered without subject matter jurisdiction.
>
> 2. The petitioner has been denied his fundamental right to appeal where as here he was not advised of his rights to appeal to request appellate counsel in violation of his 5th, 6th,

8

>14th Amends. U.S.C.A. via State v. Hunter, 2010-Ohio-657 and Roberities v. Colly, 2013 U.S. App. Lexis 21120.

Doc. 24-1, pp. 192, 195. On August 21, 2014, Scott filed a revised petition. Doc. 24-1, p. 230. The state filed a motion to dismiss, and, on January 28, 2015, the Ohio Supreme Court granted the state's motion and dismissed Scott's case. Doc. 24-1, p. 343.

### J. Federal Habeas Petition

On June 3, 2014, Scott, pro se, filed his Petition for a Writ of Habeas Corpus. Doc. 1. He listed the following grounds for relief:[3]

>**Ground One**: The common pleas court possessed no jurisdiction to try petitioner making his judgment of conviction void via Frank v. Mangum, 237 U.S. 308, (writ will issue where state judgment void for want of jurisdiction):
>
>**Supporting Facts**: The Petitioner has never been charged with committing a crime, and Petitioner has committed NO CRIME. Therefore his imprisonment is in violation of the United States Constitution, because no State or Federal Court has Jurisdiction to try the Petitioner where as here he has violated no law or committed an offense against the law, which renders Petitioner's SENTENCE VOID; JUDGMENT VOID; CONVICTION VOID as having been entered by a Court in want of jurisdiction.
>
>**Ground Three**: The Petitioner was denied the right to appeal, right to appellate counsel and records at state expense where the state court did not advise him of the fundamental right to appeal, which denies Petitioner's rights to liberty, procedural and substantive due process of law, and equal protection under the laws:
>
>**Supporting Facts**: No Court has ever advised Petitioner of his United States Constitutional Right to appeal, therefore his present imprisonment by Brigham Sloane, Warden at the Lake Erie Correction Institution, 501 Thompson Road, Conneaut, Ohio 44030-8000 is without jurisdiction and illegal.

Doc. 1, pp. 5, 7. On September 4, 2015, Respondent filed a Return of Writ (Doc. 29) and Scott filed a Traverse on September 21, 2015 (Doc. 34). In his Return of Writ, Respondent argues that Scott's grounds are procedurally defaulted. Doc. 19, pp. 8-18.

### II. Law

#### A. Standard of Review under AEDPA

---

[3] Scott originally had a second ground for relief, which he withdrew. See Doc. 1, p. 6; Docs. 18, 19.

9

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to Good's habeas petition because he filed it after the effective date of AEDPA. 28 U.S.C. § 2254; *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007). Under AEDPA, a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). In contrast, when state court remedies are no longer available, procedural default rather than exhaustion applies. *Williams*, 460 F.3d at 806.

**Exhaustion.** A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts"). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902

10

F.2d 480, 483 (6th Cir. 1990). In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. McMeans v. Brigano, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *See, e.g.*, Franklin v. Rose, 811 F.2d 322, 325 (6th Cir. 1987); Prather v. Rees, 822 F.2d 1418, 1421 (6th Cir. 1987).

**Procedural Default.** Procedural default may occur in two ways. Williams, 460 F.3d at 806. First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id*. In Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *See also* Williams, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing Maupin, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" Williams, 460 F.3d at 806 (citing O'Sullivan, 526 U.S. at 848). "If, at the time of the federal

11

habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review. *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman,* 501 U.S. at 750.

**Merits Review**. In order to obtain habeas relief under 28 U.S.C. § 2254(d), a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). *Id*.

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id. at 413*. "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, as well as legal principals and standards flowing from Supreme Court precedent. *Id*. at 412; *Ruimveld v. Birkett*, 404 F.3d

12

1006, 1010 (6th Cir. 2005). A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

### III. Claim Analysis

Scott sets forth two grounds for relief in his Petition. Doc. 1, pp. 5, 7. Respondent argues that Scott's grounds are procedurally defaulted. Doc. 29, pp. 8-18. The undersigned recommends that that the Court find that Ground One fails on the merits and that Ground Two is procedurally defaulted.

#### A. Ground One fails on the merits

In Ground One, Scott argues that the Ohio Common Pleas Court did not have jurisdiction over him because "no indictment was ever filed." Doc. 1, p. 5; Doc. 34, p. 2, 4. He appears to

13

assert that, because the indictment does not have a "filed stamp" on it, it was never returned and filed in his case. Doc. 34, p. 2, 4. The undersigned disagrees. As the Cuyahoga County, Eighth District of Ohio Court of Appeals explained,

> {¶ 6} Indictments are not court decisions and, therefore, do not require a judge's signature. To be valid, Crim.R. 6(C) and (F) require that the grand jury foreman sign the indictment and that the clerk endorse the filing date upon it. *State v. Pillow*, 2d Dist. No.2010–CA–71, 2011–Ohio–4294, ¶ 19. Crim.R. 7(B) requires the prosecuting attorney or assistant prosecuting attorney sign the indictment. All of these requirements have been met, and the indictment was properly made part of the court's record .... Therefore, we find no defects in the indictment that would preclude the trial court from having jurisdiction over this case.

*State v. Rogers*, 2012 WL 4755404, at *1 (Oh. Ct. App. Oct. 4, 2012); *see also State v. Caulton*, 2013 WL 3462438, at *5 (Oh. Ct. App. June 27, 2013) ("To be valid, Crim.R. 6(C) and (F) require that the grand jury foreman sign the indictment and that the clerk endorse the filing date upon it. Crim.R. 7(B) requires the prosecuting attorney or assistant prosecuting attorney sign the indictment.").

Here, the requirements of Crim. R. 6(C) and (F) and Crim. R. 7(B) have all been met. The grand jury foreperson signed every page of the indictment. Doc. 24-1, pp. 1-8. The clerk endorsed the filing date upon the indictment. Doc. 24-1, p. 1 ("Received for Filing" on January 5, 2012, stamped and signed by the clerk of courts). The prosecuting attorney signed every page of the indictment. Doc. 24-1, pp. 1-8. And it was entered on the docket. Doc. 24-1, p. 352 (entry dated January 5, 2012, "indicted original"). Thus, Scott's argument that the indictment in his case was never filed and that the trial court lacked jurisdiction over him is belied by the record and, therefore, fails on the merits.

### B. Ground Three is procedurally defaulted

In Ground Three, Scott argues that the state trial court, during resentencing, did not advise him of his right to appeal, did not appoint appellate counsel or advise him of his right to

appellate counsel, and did not advise him of his right to a transcript at the state's expense. Doc. 1, p. 7; Doc. 34, p. 6. Respondent, apparently conceding that the state trial court did not so advise Scott, argues that Scott procedurally defaulted this claim because, although he appealed his resentencing, the Ohio Court of Appeals and the Ohio Supreme Court applied a procedural bar when they denied him relief. Doc. 29, pp. 16-18.[4]

Scott was resentenced in June 2013. Doc. 24-1, pp. 137-138. He timely filed a notice of appeal in the Ohio Court of Appeals but, on August 27, 2013, the Court of Appeals, sua sponte, dismissed his appeal because he failed to file the record. Doc. 24-1, p. 149. He did not file a timely appeal to the Ohio Supreme Court. On October 25, 2013, he filed a second notice of appeal and motion for leave to file a delayed appeal with the Ohio Court of Appeals. Doc. 24-1, pp. 151, 156. The Ohio Court of Appeals denied him leave to file a delayed appeal and dismissed his case. Doc. 24-1, pp. 162, 163. Scott did not file a timely appeal of that denial and dismissal with the Ohio Supreme Court. Thus, Scott procedurally defaulted because he did not appeal these rulings to the Ohio Supreme Court. *See Williams*, 460 F.3d at 806 (a petitioner commits procedural default when he fails to pursue his claim through the state's ordinary appellate review procedures); *O'Sullivan*, 526 U.S. at 848.

On September 25, 2014, Scott filed a motion for delayed appeal in the Ohio Supreme Court, attempting to appeal the Ohio Court of Appeals' dismissal of his resentencing appeal. Doc. 24-1, p. 198. On November 5, 2014, the Ohio Supreme Court, without explanation, denied his motion for a delayed appeal and dismissed the case. Doc. 24-1, p. 229. "Where a state court is entirely silent as to its reasons for denying requested relief, we assume that the state court would have enforced any applicable procedural bar." *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th

---

[4] Respondent does not argue with Scott's version of events and did not file a transcript of any of Scott's resentencing proceedings. The undersigned notes that, at resentencing, Scott was represented by his attorney of record during his direct appeal, *see* Doc. 24-1, pp, 21-22, 137, and his motion for appointment of counsel to appeal his resentencing was denied, Doc. 24-1, pp. 139-141.

Cir. 2004) (citing *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996)). Here, the Ohio Supreme Court was silent as to its reasons for denying Scott's delayed appeal. The undersigned, therefore, assumes that the Ohio Supreme Court, in denying Scott relief, would have enforced any applicable procedural bar. *Id*. (petitioner's ground for relief was procedurally defaulted on federal habeas review when the Ohio Supreme Court's order denying his motion for leave to file a delayed appeal was silent as to the reasons it denied relief). In sum, because the Ohio Supreme Court enforced a procedural bar when denying Scott's motion for delayed appeal, his claim is procedurally defaulted. *Id*; *Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.").

As cause to excuse his procedural default, Scott argues that he would not have failed to follow the rules of court in filing his motions if the trial court had advised him of his right to appeal, appointed counsel, and provided him with his court records. Doc. 34, p. 7.[5] Even if all these alleged failures by the trial court could constitute cause to excuse his procedural default, Scott must also show that he was prejudiced as a result of a violation of federal law. *Coleman, 501 U.S. at 750* (to overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law). Scott does not argue anywhere in his Petition or his Traverse that he was prejudiced as a result of an alleged violation of federal law. He merely asserts that, because he was denied his rights by the trial court, his

---

[5] The undersigned notes that Scott filed a timely notice of appeal; he cannot argue, therefore, that he was unaware of his right to appeal.

imprisonment "is without jurisdiction and illegal." Doc. 1, p. 7. Because Scott does not show how he was prejudiced, he cannot overcome the procedural bar.[6]

Nor does Scott allege manifest injustice, i.e., that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324 (6th Cir. 1995). Nowhere in his filings does Scott claim to be actually innocent. Instead, he argues that he is innocent because the state trial court lacked jurisdiction over him and, based on an allegedly improperly filed indictment, he committed no crime. Doc. 34, pp. 2-5. These allegations describe "mere legal insufficiency," not factual innocence. *Bousley*, 523 U.S. at 623. Scott has not demonstrated that he can overcome the procedural bar; Ground Three remains procedurally defaulted.

---

[6] In his notice of appeal after resentencing, Scott asserted that he was appealing from the trial court's judgment "imposing consecutive sentences to allied offenses of similar import." Doc. 24-1, p. 145. The undersigned notes that a state trial court's imposition of consecutive sentences does not implicate federal constitutional concerns, *Oregon v. Ice*, 555 U.S. 160, 171 (2009), and, in any event, two or more offenses are not allied offenses of similar import when they are committed against two different victims, *State v. Ruff*, 143 Ohio St.3d 114, 115 (2015), as in Scott's case.

## IV. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Scott's habeas Petition be **DISMISSED** in part and **DENIED** in part because Ground One fails on the merits and Ground Three is procedurally defaulted.

Dated: September 7, 2016

Kathleen B. Burke
United States Magistrate Judge

## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).